## Collins, et al. v. Combs, et al.

(Decided October 16, 1914.)

### Appeal from Letcher Circuit Court.

1. Deeds—Trust Deeds—Effect.—Where the owner of certain land contracts with another for the improvement and sale of the land, and, for the purpose of carrying out the contract, executes to his son a deed of trust to the property, with power of sale, the contract and deed should be considered together, and the son is authorized, after the grantor's death, to make conveyance of the land.

2. Conversion—Direction.—Money directed to be employed in the purchase of land, and land directed to be sold and converted into money, are to be considered as that species of property into which they are directed to be converted, without regard to the manner in which the direction is given.

3. Conversion—Direction—Mandatory.—In order to effect an immediate conversion by deed of trust with power to sell, the direction to sell must be mandatory and not discretionary, and where the power is discretionary, the conversion does not take place until the sale is made.

4. Deeds—Deed of Trust—Fraud—Evidence.—Where, in an action to settle a decedent's estate, certain heirs charged fraud and undue influence in the execution of a deed of trust by the decedent to his son, evidence examined and held not to sustain the charge of fraud and undue influence.

D. D. FIELDS & SON, D. I. DAY and T. L. EDELEN for appellants.

O'REAR & WILLIAMS, R. MONROE FIELDS, IRA FIELDS and DAVID HAYS for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Affirming.

On May 17, 1911, Edward Combs died intestate a resident of Letcher County, Kentucky. He had been twice married. By his first wife he had a number of children. Several of these children survived him, while others had died leaving children who were alive at the time of Edward Combs' death. By his second wife, Oma Combs, he had a child, Alberta Combs. His widow and this child also survived him. Decedent owned a tract of land consisting of about 30 acres, which shortly before his death he desired to have platted and laid off into town lots. For the purpose of carrying out this plan he entered into a contract with one S. C. Tyree, a surveyor, by which the latter agreed to do all the neces-

sary surveying, platting and laying off the tract into streets, alleys and building lots, the streets and alleys to be described by name and the lots to be numbered. Tyree was to remove all the rubbish from and roll the land, and the expense of this work was to be borne equally by Tyree and Combs. The lots were to be advertised for sale in several newspapers. This expense was also to be shared in equal proportions by Tyree and Combs. Tyree was authorized to sell the lots for reasonable prices, and for his services in laying out the addition and selling and assisting in selling the lots, he was to receive a commission of twenty per cent of their sale price. After the lots were platted as provided in the contract, Edward Combs and wife executed a deed dedicating the streets and alleys to the public, and the plat of the lots, together with the deed, was recorded in the Letcher County Clerk's office. On March 23, 1911, Combs and wife executed a deed conveying the land which Tyree had platted and laid off into lots to Shade C. Combs, son of the grantor, Edward Combs, as trustee for the purpose of carrying out the provisions of the contract with Tyree. In this deed of conveyance it was provided that as the lots were sold the trustee should execute deeds of conveyance to the purchasers, and should collect the purchase money, and out of the funds realized from the sales, the trustee and Oma Combs, wife of the grantor, Edward Combs, should receive $200 each, in consideration of the care and attention which they had given Edward Combs. The remainder of the funds realized from sales was to be distributed equally among the heirs of Edward Combs. In addition to the foregoing provisions, the deed of trust contained the following provision:

"It is the intention, and one of the moving considerations for the execution and delivery of this deed, that in the event of the death of said Edward Combs, said contract with said S. C. Tyree shall be fully carried out, and any property remaining unsold at the time of the death of said Edward Combs covered by said contract shall thereafter be sold by said Tyree under said contract in the same manner as if the said Edward Combs were living, and the title thereto conveyed to said purchaser by the said Shade C. Combs as herein provided."

On June 5, 1911, James P. Lewis was appointed and qualified as administrator of the estate of the decedent.

He brought this action for a settlement of the estate, and to have the deed from his intestate to Shade Combs construed for the purpose of determining how the estate should be distributed. The widow, the children and grandchildren of the decedent, together with several creditors of the estate, were made parties defendant, and asked to set up their claims against the estate. Oma Combs, the widow of the decedent, filed an answer and counter-claim, setting out the contract between Combs and Tyree, and the deed from Combs to his son, Shade C. Combs, and asserting claim to one-half the proceeds of the lots directed to be sold, on the ground that the effect of the contract and deed was to convert the real estate into personalty. Edward Combs' heirs at law, with the exception of Shade C. Combs and Alberta Combs, filed answers, counter-claims and cross-petitions against Oma Combs, Alberta Combs and S. C. Tyree, and also against certain purchasers of lots subsequent to the death of Edward Combs, wherein they attacked the conveyances made by Shade C. Combs on the ground that they were unauthorized, and on the further ground that the conveyance to Shade C. Combs, trustee, was obtained by fraud and undue influence. On final hearing, the chancellor sustained the validity of the contract and the deed of trust, and upheld the authority of Shade C. Combs to make conveyances to purchasers. He also held that the effect of the contract and deed was to convert the real estate into personalty, and sustained the contention of Oma Combs that she was entitled to one-half thereof in the distribution of the estate. At the same time he dismissed the answers, counter-claims and cross-petitions of the various heirs. From the judgment so entered the heirs appeal.

(1) The first question to be considered is the effect of the contract and deed of trust. We need not consider the effect of the contract standing alone. As the deed was not only made to carry out the contract, but was intended to give full power to Shade C. Combs to take the place of the grantor, Edward Combs, and do after the latter's death what Edward Combs would have done if living, the contract and deed should be considered together, and when so considered there can be no doubt that Shade Combs was fully authorized to make conveyances of the land in question.

(2) The next question is: Was the real estate converted into personalty by the contract and deed. The

principle on which the doctrine of conversion is based is that equity regards things directed or agreed to be done as having been actually performed. Hence, money directed to be employed in the purchase of land, the land directed to be sold and converted into money are to be considered as that species of property into which they are directed to be converted, without regard to the manner in which the direction is given. While the doctrine is usually applied in the case of a devise by will, it is equally applicable in the case of the disposition of property made by deed, the only difference being that a will usually speaks from the death of the testator, while a deed usually speaks from the date of its delivery. Loughborough's Exr. v. Loughborough's Dev., 14 B. Mon., 441; 9 Cyc., 825.

However, in order to effect an immediate conversion by deed of trust with power to sell, the direction to sell must be mandatory and not discretionary. In other words, there must be an absolute direction to sell, and not a mere power which may or may not be exercised. In the case of a mere power to sell, the conversion does not take place until the sale is made. Christler's Exr., &c. v. Meddis, 6 B. Mon., 35. Looking at the contract and deed in the light of these principles, it is plain not only that they confer the power of sale, but contain a positive direction to sell. That being true, the real property was converted into personalty, and under the statute Oma Combs was entitled to one-half thereof, after the payment of decedent's debts.

But it is insisted that the contract was obtained by fraud and undue influence. There is evidence to the effect that decedent was about 86 years old at the time of his death, and that his mind, on account of old age and the use of whiskey, was not as strong as it had been. On the other hand, it was shown that decedent was a man of force and character, and knew exactly what he wanted to do. It is also shown that in making a trade he knew how to take care of himself. There is no evidence in the record tending to show that the contract was one which the decedent should not have made, but on the contrary, it is shown to have been an advantageous contract under the circumstances. Certainly there is nothing in the record suggesting any fraud on the part of Tyree. But it is contended that the relation of the decedent's wife and son, considered in connection with decedent's age and the circumstances surrounding him at the time of

the execution of the contract and deed, is sufficient to raise the presumption of fraud and undue influence. We are unable to see any motive on the part of Shade Combs for the execution of the contract, for although he is given $200 for taking care of his father, it is certain that the conversion of the realty into personalty will decrease his share of the estate more than that amount. It must be remembered, too, that the principal reason for executing the deed was to carry out the contract with Tyree. That it would incidentally benefit Mrs. Combs in the distribution of the property in the event of decedent's death is not, we think, sufficient to raise the presumption of undue influence on her part, and cast on her the burden of showing that the deed was not the result of undue influence. If such were the rule, the wife in nearly every case of the sale of a husband's real estate or in the execution by the husband of a binding contract for its sale just prior to his death, would be required to rebut the presumption of undue influence on her part. Mrs. Combs says that she did not know the effect of the deed prior to her husband's death, and it may be doubted if any one connected with the transaction thought of or mentioned to the decedent of Mrs. Combs the effect which the deed would have on the distribution of his estate. A consideration of the entire record convinces us that the decedent made an advantageous contract. His purpose in executing the deed was to carry out the contract. Incidentally he desired to reward his wife and his son by a former wife, who had remained with him for a number of years and looked after his wants, for the care and attention which they had bestowed on him, and in our opinion the charge of fraud and undue influence is not sustained.

Judgment affirmed.