## Schriver, et al. v. Frommel, et al.

(Decided February 8, 1918.)

### Appeal from Campbell Circuit Court.

1. Trusts—Termination—Sales—Authority of Court.—Where several joint owners of certain pieces of real estate, for the mere purpose of convenience in effecting their sale conveyed them to one of their number in trust, with full power to rent, lease, sell or convey any part thereof, a court of equity, upon the application of one of the trustors and beneficiaries, has the power to terminate the trust and to sell the property and divide the proceeds where there has been an unreasonable delay of eight years in executing the

trust and the income from the trust estate is wholly dispropor-
tionate to the capital invested and the estate itself is constantly
depreciating in value.

2. Conversion—Conversion by Deed.—In order that a conversion may
be effected by deed of trust with power to sell, the direction to
sell must be absolute and not discretionary.

WM. U. WARREN for appellants.

GRISCHY & GRISCHY for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY,
COMMISSIONER—Affirming.

Crescentia C. Schriver died in the year, 1902, leav-
ing a will by which she devised her real estate to her
husband, Henry A. Schriver, for life, and the remainder
to her children, Charles, Oliver, Walter, George, Robert,
Alice, Justina, Mary, and Belle, share and share alike,
subject to an advancement of $11,000.00 to Oliver, and
$2,600.00 to Mary. In the year 1907, her daughter
Belle, died intestate and without issue, leaving her
father, Henry A. Schriver her sole heir. In the year
1908, Henry A. Schriver, the husband of Crescentia C.
Schriver, died leaving a will by which he devised four
lots to his son Walter, and the remainder of his real
estate to his other children with the exception of Mary
Frommel and Walter A. Schriver, subject to advance-
ments. On September 14, 1908, the devisees of Cres-
centia C. Schriver entered into a written agreement pro-
viding that they were to share equally in the estates of
their mother and father, and that in the distribution of
the estate of their mother, Oliver P. Schriver was to be
charged with an advancement of $6,000.00 instead of
$11,000.00, and Mary Frommel with an advancement of
$2,600.00. On September 22nd, 1908, all the heirs united
in deed by which they conveyed all the property devised
by their mother and father to Oliver P. Schriver in
trust, "with full power to rent, lease, sell and convey
any part thereof without the intervention of any court
and his deed as such trustee shall operate and be effect-
ual as though all the parties hereto had joined in such
conveyance in proper person."

This suit was brought by Mary Frommel and her
husband against the trustee and other heirs for a termi-
nation of the trust and either a partition or a sale of the
real estate and a distribution of the proceeds. The

chancellor adjudged that the several pieces of property could not be divided without impairing their value and ordered a sale thereof and a distribution of the proceeds, and the trustee and other heirs appeal.

The uncontradicted evidence shows that some of the heirs were given to travel and that the sole purpose of the trust was to facilitate sales of the property by dispensing with the necessity of forwarding the deeds to the numerous heirs for their signature.

It appears that upon the acceptance of the trust, the trustee adopted the plan of having all the heirs agree on the prices at which the various pieces of real estate should be sold and thereafter certain sales were made at these prices or other prices fixed by the heirs. At the time this suit was brought, the two estates consisted principally of a hotel, skating rink and several residences, of an estimated value of about $108,000.00, but of an actual value considerably less than that sum. Neither the trustee nor any of the heirs was able to dispose of any of these properties at the prices fixed by the heirs, and the real estate agents who were consulted in regard to the matter, all agreed that the prices were entirely too high. The evidence fails to show any breach of trust on the part of the trustee. The most that can be said is that certain pieces of property were suffered to get out of repair, but this condition was no doubt due as much to the demands of the heirs for as much income as possible, as it was to the action of the trustee himself. It does appear, however, that the net income of each of the heirs for the year 1915 amounted to only $100.00, and there is persuasive evidence to the effect that owing to the character and location of the several pieces of property, there is not only no likelihood of an increase in value, but a reasonable certainty that the property will continue to depreciate in value as it has done during the past years. It further appears that although about eight years had lapsed since the creation of the trust, the greater portion of the property still remained undisposed of.

It is argued on behalf of appellants, that as no period was fixed in the deed of trust for its termination, and no power of revocation was reserved, and no breach of duty on the part of the trustee was shown, the chancellor was without power to terminate the trust. It must be remembered, however, that this is not a case

where a trust was created by a third party and the beneficiaries acquired title subject to the conditions therein imposed, or a case where because of the incapacity, or the spendthrift tendencies of the trustors, a trust was created to prevent the mismanagement or dissipation of the estate. On the contrary it is a case where several joint owners of property for the mere purpose of facilitating its sale, selected one of their number to manage and dispose of the property. While the deed of trust specified no time for the termination of the trust, it is clear from the situation of the parties and from the object in view, that they all contemplated that the property should be disposed of and that they should receive their respective portions of the proceeds within a reasonable time. Here the trustee has had eight years, or more than a reasonable time, in which to execute the trust. The income from the estate is altogether disproportionate to the amount of capital invested and the estate itself is constantly depreciating in value. Under these circumstances, we conclude that a court of equity had the power to terminate the trust, and to order a sale of the property and a division of the proceeds. Any other rule would permit a trust created for mere purposes of convenience, to continue indefinitely even though it would deprive one of the beneficiaries of the enjoyment of her share of the property and result in a substantial loss to the entire estate. Taylor's Trustee v. Abert, &c., 15 Ky. Law Rep. 515; Meddis v. Bull's Adm'r, &c., 13 Ky. Law Rep. 767; Hegen v. Netherland, 141 Ky. 686, 133 S. W. 546.

There is no merit in the contention that the deed of trust operated as a conversion of the real estate into a personalty and that, therefore, no sale or division of the property could be had. Here the direction to sell was discretionary and not absolute and did not therefore effect an immediate conversion. Samuels v. Samuels, 4 B. Monroe 245; Collins v. Combs, 160 Ky. 325, 169 S. W. 721.

Judgment affirmed.