## Trexler et al. v. Sullivan et al.

*S. E. Bertolet* and *J. W. Bertolet,* for plaintiffs.

*George B. Balmer* and *Zieber & Snyder,* for defendants.

MAYS, J., July 28, 1939.—Plaintiffs by their bill seek a decree directing the sale of the res of a trust and the distribution of the proceeds among the cestuis que trustent. The bill sets forth that in 1931 Matthan H. Gery and Addison H. Gery gave their bond and mortgage to The Pennsylvania Trust Company for $10,000, which was a first lien upon two adjoining tracts of land; that the three defendants, other than the Berks County Trust Company, became the owners in equal shares of one half of said mortgage, and The Pennsylvania Trust Company and through it plaintiffs as liquidating trustee became the owners of the other one half of said mortgage; that on July 15, 1935, by an agreement in writing, plaintiffs and the individual defendants assigned and transferred all their interest in said bond and mortgage

to the other defendant, the Berks County Trust Company, "in trust for the following primary purposes, viz.: to collect the principal and interest of said bond and mortgage, to foreclose the mortgage and buy in the mortgaged premises, and upon obtaining title to said premises, to sell said premises and distribute the net proceeds pro rata among the aforementioned equitable owners, provided that two thirds in amount of the equitable owners thereof consent to such sale." The bill further avers that the Berks County Trust Company, trustee under the agreement, caused the mortgaged premises to be sold by the sheriff and became the purchaser thereof for a nominal consideration; that upon the property are three dwelling houses which are presently rented; that for the period of almost three years after the creation of the trust, after the payment of all operating expenses including taxes, there is a deficit or operating loss of $110.21; that taxes for the years 1932 to 1936, inclusive, remain unpaid; that the value of the premises has depreciated and will continue to depreciate; that the trustee has received an offer for the sale of a portion of the premises, to which plaintiffs have agreed, but to which the three individual defendants have refused to assent; that plaintiffs have made an offer to the individual defendants to buy the latter's interest or to sell their own to the latter at the same price, both of which offers have been refused; that the individual defendants are brothers and sister and act as a unit herein; that a dispute exists between plaintiffs and the individual defendants with respect to the price at which the premises should be sold, and that from the inception of the trust it has been, and continues to be, impossible to sell at any price fixed by the individual defendants; and, therefore, plaintiffs pray for a decree terminating the trust and directing the trustee to sell the premises and divide the proceeds or to convey to the settlors their respective interests in the premises.

Defendants' amended preliminary objections challenging the right of plaintiffs to maintain their bill were overruled and defendants granted 30 days in which to file their answer: Trexler et al., etc., v. Sullivan et al., 31 Berks 175.

Defendants' answer filed denies that the premises have depreciated in value and will continue to depreciate in the future. After admitting that they refused to give their consent to sell a portion of the premises, they aver that the price offered was not a fair and reasonable price. They further aver that it is to the best interest of all parties concerned to hold the premises for an increase in real estate values generally, and particularly for an increase in the value of the said premises.

Testimony was taken and argument had.

Because of the views herein expressed, we do not now consider it necessary to make findings of fact as requested by the respective parties.

The agreement (exhibit "A" attached to the bill) reads in part as follows:

"5—Upon obtaining the deed for the said mortgaged premises we direct you shall keep the same in repair, pay the taxes and insurance, collect the rents of the same, and in all respects exercise ordinary care in the performance of your duties.

"If and when you can effect a sale of the said premises, at a price which you deem proper, and if you secure the consent in writing of two thirds in amount of the certificate holders, you are directed to sell and convey the same to the purchaser or purchasers and give a good title for the same in fee simple."

No offer has ever been received by the trustee for the entire tract of land. There has been an offer to purchase part of the property for $4,300. The trustee feels that part of the property should not be sold.

We cannot agree with defendants' contention that the trust company can hold this property indefinitely. It must be the concern of the trustee to bring about a sale of this

property and its best efforts must be toward that end. It should be the policy of the trustee and of this court to preserve the assets of this trust from depreciation. If it should be brought to our attention that a sale is necessary to protect the trust, neither the trustee nor the court would be bound by any inhibition in the trust agreement: 65 C. J. §612, pp. 746-7. The policy of the law is not in favor of a trustee retaining real estate which yields a proportionately inadequate income simply in the hope that at some unknown time in the future it may rise in value: Phillips' Estate, 10 Dist. R. 99; 65 C. J. §611, p. 746.

Nor can we agree with the contention of plaintiffs that the nature and extent of the duties of the trustee in the present controversy are such as are inherent in the general law governing trust relationships. Primarily, the nature and extent of the duties of the present trustee must be ascertained from the trust instrument: Gouley v. Land Title Bank & Trust Co., 329 Pa. 465.

Conceding that on this record the terms of the trust must control, it does not necessarily follow that a court of equity may not find it necessary to exercise what manifestly is its power, viz., to terminate the trust. While it is true that there is no power of revocation reserved in the trust agreement, it must be remembered that there is no period fixed for its termination. Surely, as already pointed out, this is not the case of a trust that should continue indefinitely, with the result that one or all of the beneficiaries may be deprived of the enjoyment of a share of the property. The duty and power of the courts to terminate a voluntary trust have been upheld in a number of cases and, as pointed out in Trexler et al., etc., v. Sullivan et al., supra, have the sanction of the legislature.

What was said by the court in Schriver et al. v. Frommel et al., 179 Ky. 228, 230, 200 S. W. 327, 328, we believe is quite pertinent:

"It is argued on behalf of appellants, that as no period was fixed in the deed of trust for its termination, and no power of revocation was reserved, and no breach of duty on the part of the trustee was shown, the chancellor was without power to terminate the trust. It must be remembered, however, that this is not a case where a trust was created by a third party and the beneficiaries acquired title subject to the conditions therein imposed, or a case where because of the incapacity, or the spendthrift tendencies of the trustors, a trust was created to prevent the mismanagement or dissipation of the estate. On the contrary it is a case where several joint owners of property for the mere purpose of facilitating its sale, selected one of their number to manage and dispose of the property. While the deed of trust specified no time for the termination of the trust, it is clear from the situation of the parties and from the object in view, that they all contemplated that the property should be disposed of and that they should receive their respective portions of the proceeds within a reasonable time. Here the trustee has had eight years, or more than a reasonable time, in which to execute the trust. The income from the estate is altogether disproportionate to the amount of capital invested and the estate itself is constantly depreciating in value. Under these circumstances, we conclude that a court of equity had the power to terminate the trust, and to order a sale of the property and a division of the proceeds. Any other rule would permit a trust created for mere purposes of convenience; to continue indefinitely even though it would deprive one of the beneficiaries of the enjoyment of her share of the property and result in a substantial loss to the entire estate."

See also Fox et al. v. Fox et al., 250 Ill. 384, 95 N. E. 498.

Unquestionably, the trustee here is endeavoring to do its duty. It is not for us now to assume what is manifestly the duty of the trustee—to administer and execute this trust. We have pointed out that the primary purpose of

this trust is to convert the property into cash. The trustee should endeavor so to do. If it procures an offer or offers, and the beneficiaries of the trust object, then the trustee should apply to this court for instructions.

". . . where a trustee considers the time opportune for exercise of his discretionary power of sale, but the beneficiaries object, the trustee should apply to the court for instructions": 65 C. J. §609, p. 746.

And now, to wit, July 28, 1939, it is ordered and directed that the bill be retained for the purpose of safeguarding the rights of the respective parties under conditions which may hereafter develop.